UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TAROME ANTONIO HARRIS                    CIVIL ACTION NO. 12-cv-1731

VERSUS                                   JUDGE HICKS

WARDEN, LOUISIANA STATE                  MAGISTRATE JUDGE HORNSBY
PENITENTIARY

### REPORT AND RECOMMENDATION

**Introduction**

A Webster Parish jury convicted Tarome Harris ("Petitioner") of aggravated escape and two counts of aggravated battery in connection with an incident in which he and other prisoners overpowered two officers at the Webster Parish jail and escaped.  His convictions were affirmed on appeal.  State v. Harris, 966 So.2d 773 (La. App. 2d Cir. 2007).  Petitioner was later adjudicated a fourth-felony offender and received an enhanced sentence of life imprisonment on the second-degree battery convictions, plus a 50-year consecutive sentence for the aggravated escape conviction.  The sentences were affirmed on appeal. State v. Harris, 20 So.3d 1121, 1125-26 (La. App. 2d Cir. 2009).  Petitioner also pursued a post-conviction application in state court.  He now seeks federal habeas relief on several grounds. For the reasons that follow, it is recommended his petition be denied.

**Sufficiency of the Evidence**

### A.  Introduction; Elements of the Crimes

Petitioner argues in Claim Nos. 1-3 that the evidence was not sufficient to support his three convictions.  He does not deny that he participated in the escape.  His argument is that

the events did not meet all of the elements of a second-degree battery and aggravated escape.

Louisiana law states that a simple battery is the intentional use of force or violence upon the person of another or the intentional administration of a poison or other noxious liquid or substance to another.  La. R.S. 14:33.  A second-degree battery is a battery committed when the offender "intentionally inflicts serious bodily injury." La. R.S. 14:34.1. The statute defines serious bodily injury as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.  Id.  Aggravated escape is an escape when the "departure is under circumstances wherein human life is endangered."  La. R.S. 14:110(C)(1).

**B.  The Evidence**

Petitioner was among approximately 58 inmates housed in the jail on the fourth floor of the Webster Parish Courthouse.  Two deputies, Shelton Layfield and James Thompson, provided the only security on the floor on the night at issue.  There was a 911 dispatcher in the basement, but they were otherwise alone.

Petitioner was housed in a part of the jail referred to as lockdown, which had three cells that held eight men each.  At 10:00 p.m. one evening, the two officers began to lock everyone down for the night.  They secured one section of the jail and then worked their way toward lockdown.  Thompson unlocked the main door to the area, and Layfield entered and gave an order for the inmates to go to their cells.  All went except Chris Whitehead, who stood at the window and then rushed Deputy Layfield.  At that time, Petitioner and two other

inmates joined Whitehead in attacking Layfield.   Thompson entered the area to give assistance.

Deputy Layfield testified that Petitioner tried to take Layfield's ASP (expandable metal baton), but Petitioner grabbed his flashlight instead, and he threw it down.  Layfield attempted to use his Deep Freeze chemical spray.  As he grabbed it, he saw that Deputy Thompson was standing behind him "and he was hitting them trying to get them off of me." As Layfield began to spray, someone hit his hand, and Petitioner managed to grab the chemical spray.  He sprayed Layfield while holding it "not even two inches from my eyes," after which he also sprayed Thompson, and then sprayed Layfield again "and then run under me."  Layfield said  that he could not see and, "I was burning, I was hurting, I was out of it."

Layfield managed to pull his ASP and give it to Thompson, but Layfield said he was out of the fight because he could not see without prying his eyes open with his hands.  He did see Petitioner spray Thompson, and "a few licks passed" between them.  Layfield managed to lock himself inside an office.  The escaping prisoners tried to come through the door about three times, but Thompson was able to repel them with his chemical spray.  The group of four eventually escaped by breaking a key that was in a door.  Fortunately, the other 20 inmates in lockdown remained in their open cells and did not join in the attack.

Deputy Thompson gave similar testimony and described his struggle with Petitioner. "I hit, he'd spray me, and I hit him, and he would kick me, and this went on for, until I guess he ran out of spray."  Petitioner then ran back to lockdown and unlocked the cell where Thompson had previously managed to trap the other three escapees.  Thompson said that

Petitioner could have released all of the inmates, and the two deputies would have been faced with approximately 58 inmates in "a really dangerous situation." Thompson said his glasses were broken during the struggle, and he was blinded by the chemical spray, but he managed to hit Petitioner with the ASP three or four times while swinging blindly.

Both deputies were taken to the hospital for evaluation. Deputy Thompson testified that he was treated for the chemical spray, and his left leg was X-rayed. There were no broken bones or permanent injuries. Deputy Layfield, who said he felt his life was endangered that night, was examined and X-rayed. He had no broken bones but experienced "real bad headaches from the spray, and my foot was bruised up pretty good," which took a while to recover. Three of the escapees were captured within several hours, but Petitioner managed to stay on the run for approximately seven months. He rejected a plea offer and went to trial.

### C. <u>Jackson</u>; Section 2254(d) Standard

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." <u>Cavazos v. Smith</u>, 132 S.Ct. 2, 4 (2011).

Petitioner challenged the sufficiency of the evidence on his direct appeal, and the state appellate court issued a decision on the merits. Habeas corpus relief is available with respect

to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard.  <u>Parker v. Matthews,</u>132 S.Ct. 2148, 2152 (2012).

### D.  Analysis

Petitioner argues that the evidence was insufficient to prove second-degree battery of the deputies because neither suffered serious or permanent injury.  He contends that the chemical spray is designed to be a non-lethal weapon that does not cause serious injury.  The statute defines serious bodily injury to include injury that involves "extreme physical pain." That term is not further defined by the statute, but the state appellate court stated that a common sense understanding of the term would include the pain inflicted by the pepper spray in this case.  It was not necessary for the spray to produce permanent injuries, but simply to produce extreme physical pain, which the court found was evidenced by the testimony of the deputies.  Deputy Layfield said that he was in such pain that he was completely blinded and rendered helpless in a life threatening situation, and Thompson also had to resort to swinging blindly when he could see only blurred images of the prisoners.

The two men also testified to bruises to a foot and a knee that were serious enough to warrant X-rays.

With regard to aggravated escape, Petitioner argues that there is insufficient evidence that human life was endangered.  The prisoners did not use weapons other than pepper spray, but there was evidence of physical combat that involved blows, kicks, and a deputy using a weapon in an effort to defend himself, and it was possible for the other several prisoners in lockdown to have joined in the attack, which could have resulted in much more serious results.

The state appellate court reviewed the facts in detail, recited the <u>Jackson</u> standard, and set forth the elements of the crimes.  It then applied the facts to the elements, with reference to prior Louisiana decisions from similar cases.  It found that the pain caused by the chemical spray, together with the facts of physical blows, was sufficient to satisfy the extreme physical pain element of second-degree battery on both deputies.  It also found that human life was endangered within the meaning of aggravated escape, given the violent attacks on the deputies who testified  that they feared for their lives.

Petitioner argues about the lack of dangerous weapons being employed, the absence of lasting physical injuries, and policy impacts of applying the statutes to support convictions in this case.  The state appellate court reviewed each of his arguments and responded to them in a rational and logical fashion that was consistent with the elements set forth in the statutes.  A person sitting on a jury might be swayed by such arguments, but a rational trier of fact could also find that the elements of the crime were proved beyond a reasonable doubt.  More

important, the state court's application of the <u>Jackson</u> standard to the verdict was entirely reasonable, which precludes federal habeas relief on these claims.

**Consecutive Sentences; Sentencing Delay**

Petitioner argues in Claim No. 4 that the trial judge erred in imposing his escape sentence to run consecutively with the sentences for aggravated battery.  He contends that Louisiana law allows the trial judge discretion whether to order sentences to run consecutively or concurrently, but concurrent sentences are favored, and a trial court should give reasons for imposing consecutive sentences.  He also complains that the trial judge violated La. C.Cr. P.  art. 873 by sentencing Petitioner without waiting 24 hours after denying his motion for post-verdict acquittal.

The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Claim No. 4 is based solely on arguments the state court misapplied Louisiana law.  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011).  Habeas relief is not available even if Petitioner is correct on these state law issues.

**Vindictive or Malicious Prosecution**

Petitioner alleges in Claim No. 5 that he was "overcharged" and should have been charged with non-aggravated offenses that would have resulted in shorter sentences.  He contends that the State, without reason, portrayed him as the mastermind even though the

other three escapees played an equal or greater role.  He also complains that the other three were white and were allegedly provided "favorable plea negotiations."  He argues in Claim No. 14 that he was maliciously prosecuted because the State filed a motion to nolle prosequi a charge of aggravated escape but then proceeded to trial on that same charge.

The state trial judge rejected the claims, reasoning that the finding of sufficiency of the evidence on appeal precluded them. The state appellate court summarily stated that Petitioner "failed to meet his burden of proof to show that relief should be granted regarding his claim of malicious prosecution." Tr. 654.  The Supreme Court of Louisiana denied writs without comment.

These claims were adjudicated on the merits in the state court, so habeas relief is available only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A prosecutor has discretion to enter into plea bargains with some defendants and not with others.  Absent a showing of vindictiveness or an arbitrary standard, the prosecutor's decision is not subject to constitutional scrutiny.  Russell v. Collins, 998 F.2d 1287, 1294 (5th Cir. 1993).  Prosecutors generally have discretion to decide who to prosecute, which offense to charge, and what measure of punishment to seek.  U.S. v. Molina, 530 F.3d 326, 332 (5th Cir. 2008), citing U.S. v. Batchelder, 99 S.Ct. 2198 (1979).

Defense counsel mentioned near the beginning of trial that the prosecutor had recently issued a new bill of information that reduced the charges.  After discussion with defense counsel, the prosecutor had "pared it down" to just the three counts on which Petitioner was convicted.  Tr. 99.  The State then presented evidence to prove guilt of the charged offenses. There was no mention at trial of the race of any of the participants in the crime.  As for Petitioner's role, the evidence shows that he was heavily involved in the physical force used against the officers.  Deputy Thompson was asked if he could tell whether any of the four inmates "was more or less in charge."  He answered, "I would say [Petitioner] was" because Petitioner was the one who knew where the keys were stored on a desk and how they worked in a back door, and Thompson did not believe the other three had that information or were capable of pulling off the escape.  Tr. 141.

The record provided facts to objectively warrant the prosecutor's decision to pursue the charges sought against Petitioner, and there is no hint of evidence of harsher treatment based on his race.  The state court's rejection of the vindictive prosecution claim was reasonable based on the record, so habeas relief is not permitted.

The same is true with respect to the malicious prosecution claim.  Petitioner asserts that the State filed a motion to nolle prosequi a charge of aggravated escape but then proceeded to trial on that same charge.  The state court explained that the dismissal of the charge was in Case No. 72,601, and the conviction was obtained in Case No. 73,934.  The dismissal of a charge in the other case had no bearing on the conviction in this case.  Tr. 657.  Petitioner offers no facts to explain why the trial judge's assessment was incorrect, not does he cite law

to the effect that the dismissal of a charge in one case bars prosecution in another.  Habeas relief is not permitted on this claim.

**Ineffective Assistance of Counsel**

### A.  Introduction; Section 2254(d) Standard

Petitioner asserts several claims of ineffective assistance of counsel.  To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold.  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

### B.  Background Facts

Petitioner was represented by Mary Ellen Halterman, a member of the Indigent Defender Board.  She appeared in court with Petitioner on the day of jury selection.  Petitioner told the court that he wanted to dismiss his attorney "because she's been

ineffective" to his knowledge.  Petitioner also claimed that he had a paid attorney, Peter Flowers, but the judge and prosecutor explained that Mr. Flowers represented Petitioner in connection with unrelated drug charges and had made it abundantly clear that he did not represent Petitioner in this matter.  Petitioner complained that Ms. Halterman had not shown him any motions or other papers pertaining to his case, and she had not come to talk to him before trial.  Ms. Halterman took issue with that, and Petitioner conceded that she had visited him a week earlier, but he claimed it was regarding a different charge.

Ms. Halterman stated that she began representing Petitioner on June 1, 2006, about 60 days before the trial date, and she had succeeded in persuading the district attorney to drop some charges on the grounds that some of the original counts were inapplicable or raised double jeopardy issues.  The prosecutor agreed with that representation.  Ms. Halterman said she was not surprised by the charges that were at issue, she was ready for trial, and she had been preparing since a status conference several weeks earlier.  The judge explained to Petitioner that counsel had succeeded in getting two charges against him dropped, but Petitioner complained that the charges that remained were aggravated in nature. Of course, that was the central issue at trial.  The court advised Petitioner that he had the right to hire an attorney to represent him, but he did not have the right to wait until the day of trial and demand a change in his appointed attorney.

The next day, as trial began, Petitioner asked to state for the record that Ms. Halterman was married to Randy Smith, an assistant district attorney in Bossier Parish who worked under District Attorney Schuyler Marvin (who prosecuted this case and whose two-

parish jurisdiction extended to Webster Parish where this case was tried).  Petitioner said he "just wanted to put that on the record here this date."  Halterman then asked for Petitioner to indicate whether he wanted her to proceed as his attorney, and Petitioner said, "No, I don't."  Judge Burchett said, "Well, it's too late now" because the jury had been selected and was ready to go.  Tr. 94-106.

### C.  Marriage to ADA

Petitioner's Claim No. 13 asserts that Ms. Halterman's marriage to ADA Randy Smith gave rise to a conflict of interest that should result in his conviction being vacated.  He complains that counsel failed to adequately investigate, did not call character or critical witnesses, and conspired with the prosecution to cause the conviction.

Petitioner raised this issue in a pro se assignment of error on direct appeal.  The appellate court noted that claims of ineffective assistance are generally addressed in post-conviction proceedings, but it found the record sufficient to address the claim early since Petitioner insisted.  The court reviewed the relevant facts and noted that counsel had successfully eliminated some of the charges and had made objections and cross-examined witnesses at trial, after which she filed a motion for post-verdict acquittal, as well as a timely motion to reconsider sentence and motion for appeal.  The court found that counsel's efforts were competent and did not prejudice Petitioner, even though he may not have agreed with all aspects of her strategy.  The claim was denied.  State v. Harris, 966 So.2d at 782-84.

The right to effective assistance of counsel includes the right to an attorney who does not have an actual conflict of interest.  Strickland, 104 S.Ct. 2067.  A conflict exists when

counsel places herself in a position conducive to divided loyalties.  U.S. v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985).  Outside of the multiple representation context, the Strickland standard governs claims of ineffective assistance based on conflict.  Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir. 1995)(en banc).  "Under the Strickland standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."  Id. at 1271.  Petitioner must show a denial of effective assistance and that prejudice resulted from the conflict.  Id.

There is no factual basis to support Petitioner's assertions such as that counsel conspired with the State or refused to "let" two co-defendants testify in support of the defense.  What is in the record reflects that counsel rendered a zealous defense in the face of evidence that showed her client undeniably used force on two deputies and escaped from jail. She attempted to establish and argued that lesser offenses were applicable, but she succeeded only in part when she had the prosecutor eliminate a number of counts.  This record provided the state court a reasonable basis for its determination that Petitioner had not met his burden under Strickland, so habeas relief is not permitted.

### D.  Preparation for Trial

Petitioner states in Claim No. 8 that his counsel was ineffective because she was not given sufficient time to prepare a defense after the DA modified the bill of information on the day of trial.  He contends that additional time to prepare could have resulted in her learning that the particular chemical agent used is marketed as being safer yet "equal to hot pepper in the eyes."  The record shows, as discussed above, that counsel's efforts had

persuaded the DA to modify the bill of information to eliminate three counts, and she stated that she was prepared to go to trial on the new bill.  The evidence did indicate that the spray had an effect similar to hot pepper in the eyes—which is extremely painful—so more evidence on that point would not likely have made any difference.  The state court was well within the bounds of reasonableness to find that Petitioner had not met his burden under Strickland or otherwise demonstrated entitlement to relief on this claim.

### E.  Witnesses, Objections, and Double Jeopardy

Petitioner argues in Claim No. 6 that he advised his counsel that he wanted to call as witnesses the three co-defendants who escaped with him.  Petitioner said he believed their testimony would show that his involvement in the crime was minimal rather than being a leader as suggested by the prosecution.  Petitioner represents that the witnesses were subpoenaed but, for reasons never made clear to him, not called to testify.

The record shows that the defense rested immediately after the State did so.  Tr. 148. Counsel later stated that she had advised Petitioner of his right to testify, but he had elected not to do so.  Petitioner then agreed with that election.  He did not raise any question as to why other witnesses were not called.  Tr. 153-54.

Petitioner argued on direct appeal that counsel did not allow any of his co-defendants to testify as to whether there was a plan to escape.  The court noted that the defense strategy was aimed at avoiding a conviction for the aggravated offenses, and it did not find counsel's performance in this regard ineffective.  State v. Harris, 966 So.2d at 782-84.  The appellate court acknowledged the argument that counsel did not call the co-defendants, but it did not

offer any specific analysis on that point.  This court must nonetheless render  Section 2254(d) deference to even a summary state court decision on the merits.  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Furthermore, to demonstrate Strickland prejudice on a claim of uncalled witnesses a petitioner must show that the witnesses would have actually testified at trial if called and would have given favorable testimony.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000).  The record contains no affidavits or other information from the co-defendants as to whether they would have offered the testimony Petitioner suggests.  Furthermore, whether Petitioner was a ringleader or planner of the escape was not an element of any of the crimes charged.  He would have been equally guilty of the offenses whether he were a leader or a mere follower who engaged in the actions he took.  The state court's rejection of this claim was not unreasonable.

Petitioner also includes in this claim an argument that counsel failed to argue a double jeopardy defense that he presented in a motion to correct illegal sentence.  Petitioner did raise the double jeopardy argument.  The trial court denied it, and Petitioner sought supervisory review.  The state appellate court also rejected the claim because aggravated escape and second-degree battery require proof of different facts for conviction.  Tr. 662-63.  Petitioner has not explained how counsel was ineffective for not more vigorously arguing this claim that was found to lack merit.  The failure of counsel to make meritless arguments is not ineffective.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002).

**Denial of Motion to Enroll Counsel**

Petitioner's hearing on his habitual offender enhancement was set for November 5, 2007. Attorney Kenota Pulliam filed a motion to enroll and a motion to continue the hearing. She signed the motions October 31, 2007 and apparently attempted to fax-file them that same day. They were not stamped filed until November 2, 2007. Tr. 390, 400-406.

The prosecutor brought up the motions in court before the case was reached on the docket. He stated that he received a message from Ms. Pulliam that morning that she was in an armed robbery trial in Caddo parish but could come later that week, perhaps Friday. The prosecutor stated that the prison transport officers had come a long way for the hearing, and there were witnesses standing by, so he wanted to find out early if the court were going to grant the continuance, so the witnesses and transport officers could be on their way. The judge said that he was not going to grant the motions. Tr. 456-59.

Later that day, Petitioner made a pro se motion to withdraw Ms. Halterman as his attorney "because I have a paid attorney." The court stopped him there, explained that Ms. Halterman had done an excellent job at trial despite Petitioner's complaints, and said that he was not going to upset a trial because an out-of-town attorney asked to continue the case at the eleventh hour. Petitioner was advised of his right to proceed without counsel, but he said he wanted Ms. Halterman to represent him. Tr. 460-63.

Petitioner complains in Claim No. 10 that the trial court denied him due process when it denied the motion to enroll Kenota Pulliam as counsel in place of Ms. Halterman. Petitioner presented this issue on direct appeal of his sentences. The appellate court found

no abuse of discretion given that Petitioner had more than seven months after he was arraigned on the multiple-offender bill to obtain new counsel but waited until the last minute to attempt to make a change. State v. Harris, 20 F.3rd at 1126-27.  The claim was adjudicated on the merits, so it must receive the deference due under Section 2254(d).

An element of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006).  A defendant has the "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 109 S.Ct. 2646, 2652 (1989).  If the right is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.  Gonzalez-Lopez, 126 S. Ct. at 2564-65.

But the right is not absolute.  Gonzalez-Lopez  stated that nothing in its decision "casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 2565-66.

The Fifth Circuit applied these principles in  U.S. v. Jones, 733 F.3rd 574 (5th Cir. 2013) and affirmed the denial of a motion to substitute that came 13 days before trial and

would have required a continuance of a complicated trial and might have compromised the availability of a key witness.  See also U.S. v Contreras, 558 Fed. Appx. 400 (5th Cir. 2014) (district judge did not abuse discretion in denying late request to change counsel) and U.S. v. Villalobos, 2014 WL 4402829 (W.D. Tex. 2014) (late motion to change counsel denied when it would require continuance and inconvenience witnesses who had traveled to testify).

The request to enroll substitute counsel was filed late in the proceedings and did not come to the attention of the court until the morning of the hearing, after  Petitioner had been transported from prison and witnesses had traveled to the courthouse to testify.  Allowing Ms. Pulliam to enroll would have required a continuance of indefinite time and inconvenienced the several persons involved who were present and ready to proceed.  It is worth noting that Ms. Pulliam did not enjoy a stellar reputation for honoring her commitments.  She was later in the news because she was arrested for charges including bank fraud, and she eventually permanently resigned from the practice of law after an investigation "into numerous complaints of serious professional misconduct" showed a pattern of "accepting fees from clients in post-conviction relief matters, failing to complete the agreed-upon legal tasks, and then failing or refusing to refund the unearned fees."  In re: Kenota Pulliam, 37 So.3d 398 (La. 2010).  It is possible the trial judge took into consideration Ms. Pulliam's reputation for not honoring commitments when he elected not to continue the hearing and inconvenience several other persons based on her statement that she might be able to make it later in the week.  The state court's rejection of his claim, assessed through the deferential standard of Section 2254(d), was not unreasonable.

**Improper Closing Argument**

Petitioner argues in Claim No. 7 that the prosecutor engaged in misconduct during his closing arguments.  The prosecutor reviewed the evidence and then stated:

> Deputy Thompson and Deputy Layfield, everything that happened to them that night, if you could imagine it happening to you, if you could imagine that you were in Brookshire's and some inmates suddenly appeared and there that were not in the control of a deputy sheriff, how would you feel?  Would you feel intimidated?  Would you feel scared?  Would you think that your life was in danger?  What was going through their mind?  Were they trying to escape? ... So that's what went through those two deputies' minds that night.

He then continued and described the deputies being beaten and sprayed, while they worried about the other 50-plus inmates in the jail.  He summed up this part of the argument by stating that it was "complete chaos" and that "the violence that they reported to you that they testified about tells me without any doubt in my mind that they were in fear of their life."

Petitioner also challenges statements by the prosecutor such as his suggestion that if "any of you don't think that a can of mace is a dangerous, can be used in a dangerous fashion, try taking it to the airport and walking on ... ."  He also stated that "if you lived in Webster Parish for at least since 1983, you know what can happen when things go wrong and an inmate escapes from jail, sometimes people get killed."  (This was likely a reference to an infamous two-prisoner escape from the same jail in 1982 that resulted in the murder of a married couple and the electric chair for both prisoners in 1987.)  The prosecutor also asked "What if it happened" in a "situation like the Brookshire's grocery store or the hardware store and you find yourself with four inmates between you standing between them and

freedom and then you tell me that you don't believe that your life, that you were not scared for your life ... ."  Tr. 156-59.

Petitioner raised this argument in his post-conviction application.  The state district court denied the claim because no objection was raised at trial, and the issue was not raised on appeal.  The state appellate court summarily denied all such claims on the merits, with no reference to any procedural defenses.  The court will afford Section 2254(d) deference to that summary disposition.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

Some appellate courts have stated that prosecutors may not violate the Golden Rule by urging jurors to identify individually with victims with comments such as, "It could have been you."  See, e.g., Bedford v. Collins, 567 F.3d 225, 234 (6th Cir. 2009).  Habeas relief is available, however, only when a state court adjudication is an unreasonable application of clearly established law as decided by the Supreme Court, not by the courts of appeals.  Lopez v. Smith, 135 S.Ct. 1, 4 (2014).  Petitioner has not pointed to any Supreme Court decision that has clearly prohibited the Golden Rule type of argument in state criminal cases.

The argument at issue was possibly objectionable, but much of it was an attempt to explain in another context why the men feared for their lives, as opposed to asking the jurors to imagine themselves as the deputies/victims in the jail.  The argument was relevant in that it attempted to explain why the deputies were in a situation where life was endangered, which was an element of aggravated escape.  To the extent the argument crossed the line of what some courts would allow, it did not so infect the trial with unfairness as to make the conviction a denial of due process.  The evidence of what happened was strong, and the only significant role for the jury was applying the relatively uncontested facts to the elements of the crimes.  Under these circumstances, the state court's rejection of this claim was not an unreasonable application of any clearly established Supreme Court holding.

Petitioner quotes the prosecutor as saying, "Don't be listening to the Judge's instructions."  The transcript shows that Petitioner has made a blatant misrepresentation of the facts to this court. Indeed, the transcript shows that the prosecutor was discussing why the evidence supported serious convictions as opposed to lesser responsive verdicts. He did say "Don't be" but then changed gears in mid sentence. The transcript shows that he said, "Don't be – – listen to the judge's instructions, every one of them, because what he said in the beginning is true." Tr. 158. He went on to say that the jury should pay close attention to the elements of the crimes as set forth by the judge.

When a prisoner wonders why a court is taking so long to rule on his petition, or why Congress has placed such a heavy habeas burden on him, he can blame Petitioner and others

like him who submit frivolous claims such as this, each of which takes time for the court to address.

**Double Jeopardy**

Petitioner argues in Claim No. 15 that the state court violated the Fifth Amendment's prohibition against double jeopardy by allowing all of his convictions to stand based on one sequence of events.  Petitioner presented this issue in his motion to correct illegal sentence, which the district court denied.  The appellate court denied a writ on the double jeopardy issue and explained that aggravated escape and second-degree battery each required proof of different facts for conviction.  Tr. 662-63.

The Supreme Court in Blockburger v. U.S., 52 S.Ct. 180 (1932) stated that the rule is that where the same act or transaction constitutes a violation of two distinct statutes, the test to determine whether there are two offenses or only one, "is whether each provision requires proof of a fact which the other does not."  52 S.Ct. at 182.  The state appellate court cited Blockburger in its denial.  Aggravated escape includes an element of intentional departure from legal custody, and second-degree battery includes the infliction of serious bodily harm.  Neither of those elements are present in the other statutory definition, so the Blockburger test is satisfied.

Louisiana courts also sometimes employ what is called a "same evidence test" that is broader in concept than Blockburger.  Petitioner argues that the same evidence test is violated because his use of the chemical spray was a fact essential to each conviction, but federal habeas applicants must claim violations of a federal constitutional right.  Petitioner has not

cited any Supreme Court decision that clearly establishes the same evidence test as part of federal double jeopardy law.  The Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases.  <u>U.S. v. Felix</u>, 112 S.Ct. 1377, 1382 (1992).  Accordingly, the undersigned has not applied the same evidence test in habeas cases.  <u>Hampton v. Warden</u>, 2013 WL 5673622 (W.D. La. 2013).  Habeas relief is not available on this claim.

**Denial of Motion to Quash**

After Petitioner was convicted, the State filed a bill of information that charged him as a multiple offender.  Petitioner filed a pro se motion to quash (Tr. 380-86) on the grounds that the records of some of his prior convictions did not establish that he was advised of the nature of the charge, the minimum and maximum sentences, and eligibility for good time credits.  Petitioner's counsel stated at the hearing that Petitioner said he filed a motion to quash, but neither she nor the State had seen it.  The court stated that imaginary motions were not ruled upon, and the case proceeded.  Tr. 463.  The court later entered a written order that stated the motion was denied because it did not fit within the Code of Criminal Procedure's definitions of a motion to quash.

Petitioner argued on direct appeal that the trial court erred in denying his motion to quash.  The appellate court found that his motion was substantively proper, and the trial judge had improperly applied the procedural articles to deny the motion.  The court went on to decide, however, that the motion was several months untimely under the habitual offender

statute, so the trial judge was not required to consider it.  <u>State v. Harris</u>, 20 So.3d at 1125-26.

Petitioner argues in Claim No. 9 that his motion was a substantively proper means of challenging the validity of his prior convictions for enhancement purposes.  The state appellate court agreed with him on that point but then held that the motion was untimely. Petitioner offers no argument or explanation on the timeliness issue.  There is no indication that the state appellate court's rejection of this claim was an objectively unreasonable application of any clearly established Supreme Court precedent.

**Jurisdiction Over Habitual Offender Sentencing**

Petitioner was convicted and sentenced.  He then appealed and, while that appeal was pending, the State billed him as a multiple offender, which resulted in his original sentences being vacated and enhanced sentences being imposed.  Petitioner argues in Claim No. 11 that the trial court lacked jurisdiction to preside over the habitual offender matter while his original appeal was pending before the appellate court.

An application for habeas corpus shall not be granted unless the applicant "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The State contends that Petitioner did not properly present this claim to the state courts. Petitioner filed a reply memorandum but did not address this deficiency.  Accordingly, it appears this claim is barred for lack of proper exhaustion.  Furthermore, the claim is at best an argument that the state courts violated their own procedural laws, and such claims do not constitute grounds for habeas relief.  <u>Estelle v. McGuire</u>, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.")

**Habitual Offender Issues**

Petitioner asserts in Claim No. 12 several attacks on his habitual offender sentence enhancement. He first complains that the trial court did not advise him of his right to remain silent at the hearing. He raised this claim on the appeal of his sentence. The appellate court reviewed the record and found that Petitioner had been properly arraigned, and there was no requirement in the habitual offender statute that the court read him his rights at each hearing after the arraignment. <u>State v. Harris</u>, 20 So.3d at 1127-28. Petitioner did not enter a guilty plea to the habitual offender charge, and he does not point to any statements he made that were used against him. Petitioner has not demonstrated that the rejection of this claim was an objectively unreasonable application of any clearly established federal law.

Petitioner also complains that the trial court did not properly adjudicate him a third or fourth felony offender because the court did not cite a specific section of the statute or articulate sufficient reasons for the decision. Petitioner's claim is based on what he contends are requirements of the state statute, but habeas relief is available only for violations of federal constitutional law. The state appellate court found that the adjudication was sufficient under state law. There is no basis for relief on this claim.

Petitioner next argues that the trial court did not state which counts constituted the offenses upon which the multiple bill rested and did not state which of his convictions were enhanced. This argument also appears to rely upon an interpretation of state law. In any event, the state appellate court set forth with specificity and reference to case numbers the prior convictions that were used to enhance the sentences, as well as the precise

enhancements that were imposed.  <u>State v. Harris</u>, 20 So.3d at 1128.  There is no basis to find a constitutional violation in these facts.

One of Petitioner's many prior convictions was possession of cocaine in Docket No. 60,365.  His counsel argued that the conviction should not be considered because it was not adequately proven.  The prosecutor argued at sentencing that a mandatory life sentence was required even if that conviction were not considered.  The trial judge agreed and imposed a life sentence.  Tr. 496-98.  Petitioner argues that it was error for the trial court to sentence him as a fourth rather than third felony offender even though the resulting sentence was the same.  The state appellate court found that the sentence was appropriate and that there was no error in the trial judge not precisely adjudicating him a third or fourth felony offender. <u>State v. Harris</u>, 20 So.3d at 1128.  Petitioner's complaints about these proceedings appear to be based solely on state law.  There is no showing of a violation of clearly established federal law.

Finally, Petitioner argues that the State did not offer adequate proof of his prior convictions.  He quibbles about fingerprint quality, the admissibility of hearsay and business records under state evidence rules, and the like.  Petitioner presented these arguments to the state appellate court, and it rejected them because there had been no contemporaneous objection at the hearing.  <u>State v. Harris</u>, 20 So.3d at 1128-29.  It appears that this claim is, therefore, subject to a procedural bar, but the State has not asserted that defense.  With respect to the merits, the sufficiency of the evidence requirement for an habitual offender hearing is not well established, but <u>Jackson v. Virginia</u>, 99 S.Ct. 2781 (1979) has been

applied in at least some habeas challenges to the sufficiency of the evidence in a multiple offender hearing.  <u>Warfield v. Warden</u>, 2012 WL 3067604 (W.D. La. 2012); <u>French v. Estelle</u>, 692 F.2d 1021 (5th Cir. 1982).  Assuming that standard applies in habeas review, the State met it in this case with fingerprint testimony and records from the prior convictions. The state court's rejection of this claim was not an objectively unreasonable application of <u>Jackson</u> or any other clearly established Supreme Court holding.  Much of Petitioner's argument on this point regards the application of state court evidentiary rules rather than the overall sufficiency of the evidence, and such state law evidence or procedural issues cannot give rise to habeas relief.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of August, 2015.

Mark L. Hornsby
U.S. Magistrate Judge